UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BENYAMINI,<br><br>Plaintiff,<br><br>vs.<br><br>D. MANJU ANO, et al.,<br><br>Defendants | Case No. 1:06 cv 01096 AWI GSA PC<br><br>FINDINGS AND RECOMMENDATION RE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF NOS. 106, 152)<br><br>OBJECTIONS DUE IN THIRTY DAYS |

Plaintiff is a former state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1). Pending before the Court is Defendants' motion for summary judgment. Plaintiff his opposed the motion.[1]

**I.   Procedural History**

This action proceeds on the May 23, 2008, third amended complaint against Defendants Manjuano, Wilcox, Wilkerson, and O'Grady for violations of the Eighth Amendment's prohibition of cruel and unusual punishment. Defendant Manjuano (named as Mandujano in the

---

[1] Defendant Manjuano (incorrectly named as Mandujano) filed her motion for summary judgment on August 8, 2011 (ECF No. 106). DefendantsO'Grady, Wilcox and Wilkerson filed their motion for summary judgment on January 6, 2012 (ECF No. 152). On July 10, 2012, the Court issued and re-served Plaintiff with the summary judgment notice required by Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988)(ECF No. 191.) The order was re-served in response to Woods v. Carey, 684 F.3d 934 (9th Cir. 2012).

complaint), filed a motion for summary judgment. Defendants Wilcox, Wilkerson, and O'Grady filed a separate motion for summary judgment.

## II. Allegations

Plaintiff, formerly an inmate in the custody of the Stanislaus County Sheriff at the Stanislaus County Jail, brings this civil rights action against jail officials employed by the Stanislaus County. Plaintiff names as Defendants D. Manjuano, RN, and Sheriff's Deputies Wilcox, Wilkerson and O'Grady. Plaintiff alleges that he suffers from extreme claustrophobia and was housed in a small cell in segregation for approximately five months commencing on June 25, 2003. Plaintiff contends that his confinement in segregation caused him physical and mental harm as a result of his extreme claustrophobia. In the screening order entered on July 1, 2008, the Court noted that Plaintiff's allegations that his confinement in segregation caused him extreme physical and mental problems due to his claustrophobia, and that Defendants Manjuano, Wilcox, Wilkerson and O'Grady were aware of the situation but failed to take any action, were sufficient to support an Eighth Amendment claim under federal notice pleading standards.

## III. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denial of its pleadings,

2

but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under governing law, Anderson, 477 U.S. at 248; Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Matsushita, 475 U.S. at 588; County of Tuolumne v. Sonora Community Hosp., 263 F.3d 1148, 1154 (9th Cir. 2001).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's notes on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam)). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985)(aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts. Where the record taken as a

whole could not lead a rational trier of fact to find for the nonmoving party, there is not 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

## IV.     Eighth Amendment

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citations and quotations omitted). In order to state a claim for violation of the Eighth Amendment, Plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to Plaintiff. Farmer v. Brennan, 511 U.S. 825, 847 (1994); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The routine discomfort in the prison setting is inadequate to satisfy the objective prong of an Eighth Amendment inquiry. "Those deprivations denying 'the minimal civilized measure of life's necessities are grave to form the basis of an Eighth Amendment violation.'" Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). "The circumstances, nature, and duration of a deprivation of one of these necessities must be considered in determining whether a constitutional violation has occurred. The more basic the need, the shorter the time it can be withheld." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000).

### A.     Defendant Manjuano

Defendant Manjuano supports her motion with her declaration. Defendant Manjuano declares as follows:

> I am a licensed Registered Nurse (#488076) with the State of California and received my Associate of Arts degree through the Registered Nurse Program at the Merced College in Merced, California in 1992. Previously I was a licensed Practical Nurse in

4

the state of Wyoming following my completion of the LPN program at the Laramie County Community College in Cheyenne, Wyoming in 1983. Currently I am also certified as a psychiatric and mental health nurse by the American Nurses Credentialing Center (#2009066984).

My experience in working as a nurse in the mental health field began in March 1984 when I worked for the Merced Manor, a long term mental health facility as an LVN. I continued my work there until April 1990.

In April 1990 I commenced work for Merced County Department of Mental Health at their acute care Psychiatric Health Facility ("PHF") where I worked closely with mental health patients in assessing their mental health needs and conditions through October 1998.

In October 1998 I worked as a registered nurse providing outpatient care through a County contracted outpatient clinic until March 2002.

I worked from March 2002 through July 2009 for the California Forensic Medical Group at the Stanislaus County Jail providing nursing and mental health care and assessments for patients at the County jail facilities in Modesto. Subsequently, I worked for the medical provider, Contract Care Solutions ("CCS") at the Stanislaus County jail for approximately one year.

I am currently employed once again by the California Forensic Medical Group, Inc., and provide nursing care and psychiatric nursing service at the Merced County Jail.

In the course of my work as a psychiatric nurse at the Stanislaus County Jail in 2003, I had contact with Mr. Robert Benyamini.

Mr. Benyamini reported to me in 2003 while he was incarcerated in a single cell at the Stanislaus County Jail that he was claustrophobic and that he wanted to be moved out of a single cell into the general population section of the jail.

The cell that Mr. Benyamini was housed in had a window that permitted the inmate to see outside of the facility as well as a door that permitted the inmate to see into the jail itself.

As a psychiatric nurse based upon my training and many years of experience prior to 2003 working with mental health patients, I am familiar with the signs and symptoms of claustrophobia. Claustrophobia is an anxiety disorder involving fear of enclosure or confined spaces. The clinical nursing assessment associated with the clinical presentation of claustrophobia includes the following: anxiety attacks with breathlessness, excessive sweating, dry mouth, heart palpitations, inability to think or speak clearly, among other signs and symptoms.

5

> In my assessment of Mr. Benyamini in 2003, although he said he was "claustrophobic," he did not clinically present with signs of panic attacks or the other clinical diagnostic symptoms of actual claustrophobia.
>
> In my own professional, clinical nursing assessment of Mr. Benyamini, I did not believe that he was suffering from clinical signs and symptoms of claustrophobia and, equally importantly, it was my assessment that placing Mr. Benyamini into the general population, as he was requesting, would have put him at risk of serious physical harm given his emotional and general psychological state.
>
> I did communicate to custody officials the request by Mr. Benyamini to be moved to general population.   More specifically, Mr. Benyamini's situation and mental health status were discussed by me in a team meeting with the jail physician, custody staff and the medical program manager to make sure that the best interests of the patient were properly evaluated.
>
> I never had any intent or desire to allow any harm to come to Mr. Benyamini while he was under my care at the Stanislaus County Jail and believed, based upon my best clinical assessment and years of experience working with mental health patients, that if custody were to have placed him in the general population Mr. Benyamini would have been in danger of harm and that his being housed in a single cell with windows that provided opportunities for Mr. Benyamini to view outside his cell as well as to see inside the jail was the best option for him at that time.

(Manjuano Decl. ¶¶1-14.)

The Court finds that Defendant Manjuano has met her burden on summary judgment. The issue in this case is whether Defendant Manjuano knew of and disregarded a serious risk to Plaintiff's safety, resulting in injury to Plaintiff.  Defendant Manjuano's declaration establishes that Plaintiff did not present with signs of panic attacks or the other clinical diagnostic symptoms of actual claustrophobia.  Further, Defendant Manjuano's declaration establishes that placing Plaintiff in general population, as he requested, would have put him at risk of serious physical harm given his emotional and general psychological state.  The evidence establishes, without dispute, that Defendant Manjuano, exercising her professional judgment, acted in the best interest of Plaintiff, despite Plaintiff's request.  The burden now shifts to Plaintiff to come forward with evidence that establishes a triable issue of fact as to whether Defendant Manjuano

knew of and disregarded a serious risk to Plaintiff's health or safety, resulting in injury to Plaintiff.

Plaintiff supports his opposition with his own declaration and attached exhibits. Plaintiff declares that he did indeed have claustrophobia, and that there was no need for him to be housed in a cell. Specifically, Plaintiff declares that he had no known enemies, and "there was no reason for him to be segregated from the rest of the inmates." (Pltf's Decl. ¶ 8.) Plaintiff declares that "throughout August 15-2002 to January 2004, Plaintiff sent many grievance forms stating he was 'claustrophobic,' he was having extreme difficulties coping in tight issues, and he even almost died on occasions and had to go man-down." (Id. ¶ 6.) Plaintiff refers the Court to his exhibits B-1, B-2, D and H.

Exhibit B consists of copies of inmate request forms submitted by Plaintiff, requesting his release from Administrative Segregation and back into the general population. Plaintiff indicates that he is claustrophobic, and "can't handle" being housed in a cell. Page 1 of Exhibit B includes a response to Plaintiff's request from Defendant Wilcoxson, who advises Plaintiff that "you have been given an opportunity to go to General Population but you couldn't make it. At this time you will remain in AdSeg."

Exhibit D includes copies of Mental Health Progress Notes and an On Site Emergency Response Record from California Forensic Medical Group. The Mental Health notes make no mention of claustrophobia. The Emergency Response Record indicates that on November 21, 2002, Plaintiff was upset, breathing fast, diaphoretic and complained of claustrophobia. Plaintiff was referred to Mental Health. Nothing in Exhibit D includes any reference to follow up treatment or to a diagnosis of claustrophobia by a medical professional.

Plaintiff refers to his exhibit F to support his declaration that he "is still well diagnosed with his neurological disorder, 'claustrophobia.' Over an ½ dozen of psychologists and psychiatrist case managers have diagnosed of his severe symptoms had the defendants described in Exhibit H para 3 and 5." Plaintiff's Exhibit F is a copy of a document titled "Psychiatric Evaluation – Revised Diagnosis" dated April 24, 2003. Plaintiff's revised diagnosis includes the

following: Adjustment Disorder, with anxiety; Malingering; Polysubstance Dependence; Personality Disorder, NOS, with antisocial, borderline, and narcissistic traits; Back pain without specific etiology; Difficulties with legal system; Current Global Assessment of Function (GAF). Next to the words "Adjustment Disorder, with anxiety," in handwriting similar to Plaintiff's is the word "claustrophobia."

Exhibit H is a copy of the Separate Statement of Undisputed Facts submitted by Defendants Wilcoxson, Wilkerson and O' Grady in their motion for summary judgment. Plaintiff makes written comments by some of the statements, but fails to offer any competent evidence.

Plaintiff's Exhibit G is a copy of an undated (with an indication that it was faxed from the psychologist's office on October 1, 2002) psychological evaluation by Robin Schaeffer, Ph.D., Clinical Psychologist. It appears that this evaluation was prepared as a part of the process of determining Plaintiff's competency to assist counsel in his underlying criminal proceedings. Dr. Schaeffer's conclusions follow:

> In my clinical opinion the defendant is presently suffering from a mental disorder involving paranoia which may represent a primary psychotic process and/or psychosis secondary to structural or functional organic brain damage and/or psychosis associated with post-traumatic stress disorder. I understand he is presently on no psychotropic medication. Despite the symptoms of his psychosis, he displays an adequate understanding of the nature and object of the proceedings against him. In my opinion his illness does, however, presently render him incapable of assisting counsel for his defense.

(Id.) Nothing in Exhibits F or G establish that Plaintiff was competently diagnosed with claustrophobia, or that Defendant Manjuano knew that Plaintiff was properly diagnosed with claustrophobia and acted with deliberate indifference to that condition.

Plaintiff also refers the Court to his Exhibit C, which is part of a forensic report prepared in order to evaluate whether Plaintiff could be restored to trial competency pursuant to Penal Code Section 1372. The portion of the report that Plaintiff submits establishes that Plaintiff

complained of claustrophobia, as well as difficulties in thinking, hearing voices and having "vague paranoid thoughts." Nothing in Exhibit C indicates that Plaintiff was diagnosed as claustrophobic.

The Court finds that Plaintiff has not met his burden on summary judgment. Defendant Manjuano's declaration clearly establishes that Plaintiff was removed from general population for his own safety, despite his desire to remain there. Defendant Manjuano's declaration establishes that Plaintiff, despite his belief that he was claustrophobic, did not display clinical symptoms of claustrophobia. That Plaintiff communicated to Defendant that he was claustrophobic does not, of itself, subject Defendant to liability. The undisputed evidence establishes that Defendant, using her professional judgment, acted in the best interests of Plaintiff in removing him from general population where he faced the danger of physical harm. Defendant Manjuano's motion should therefore be granted.

**B.      Defendants Wilcoxson, Wilkerson and O'Grady**

Defendants support their motion with the declarations of Defendants Wilcoxson, Wilkerson and O'Grady. Defendant Wilcoxson declares as follows:

> I was employed by the Stanislaus County Sheriff's office as a custodial officer from March 15, 1995 to December 15, 2011. I am currently retired. During Mr. Benyamini's incarceration in the Stanislaus County Jail system, I was a classification officer. My job duties included making determinations regarding appropriate housing for inmates and arranging for appropriate transportation of inmates from one facility to another or to other destinations as needed. The primary consideration in all housing classification decisions was the safety of inmates and staff. All decisions I made concerning housing classifications were made pursuant to Stanislaus County Sheriff's Office policy.
>
> Mr. Benyamini was a problem inmate. Mr. Benyamini made it very clear from the beginning of his incarceration that he wished to be placed in general population. However, Mr. Benyamini's presence in general population was very disruptive. His constant complaining, whining and disruptive behavior created security and safety issues in general population. We received several petitions from inmates asking that Mr. Benyamini be removed from general population because of the effect it was having on inmate's morale, particularly in regard to lost privileges and interference with other inmates' incarceration. Mr. Benyamini was physically assaulted

> several times by other inmates because of his behavior. The decision was made to place Mr. Benyamini in a single or double cell. This decision was necessary to protect Mr. Benyamini from other inmates, to protect other inmates from Mr. Benyamini and to preserve the safety and security of the Stanislaus County Jails.
>
> Pursuant to Department policy, any medical complaints of any inmate, including Mr. Benyamini, were immediately referred to medical staff. I have reviewed classification information regarding Mr. Benyamini and based upon that information and my recollections, Mr. Benyamini never complained of claustrophobia to me. If he had, I would have referred him to medical staff for evaluation, pursuant to policy.
>
> It was obvious to me that the risk of harm to Mr. Benyamini by being placed in general population was significant, particularly given the history of physical assaults. I had no information that placing Mr. Benyamini in a single or double cell would cause Mr. Benyamini any harm or injury whatsoever. Weighing the risks and benefits, it was clear that it was in Mr. Benyamini's best interest to remain in a one or two bed cell and not be placed in general population.

(Wilcoxson Decl. ¶¶ 2-5.) Defendant Wilkerson declares the following:

> I have been employed by the Stanislaus County Sheriff's Office as a custodial officer since April 15, 1992. During Mr. Benyamini's incarceration in the Stanislaus County Jail system, I was a classification officer. My job duties included making determinations regarding appropriate housing for inmates and arranging for appropriate transportation of inmates from one facility to another or to other destinations as needed. The primary consideration in all housing classification decisions was the safety of inmates and staff. All decisions I made concerning housing classifications were made pursuant to the Stanislaus County Sheriff's Office policy.
>
> Mr. Benyamini was a problem inmate. He did not get along, at all, with other inmates, custodial staff or medical staff. He was written up at least one time for assaulting another inmate. Wherever he was placed, he created problems. Mr. Benyamini made it very clear from the beginning of his incarceration that he wished to be placed in general population. However, Mr. Benyamini's presence in general population was extremely disruptive. His constant complaining, whining and disruptive behavior created security and safety issues in general population. We received several petitions from inmates asking that Mr. Benyamini be removed from general population because of the effect it was having on inmates' morale, particularly in regard to lost privileges and interference with other inmates' incarceration. Mr. Benyamini was physically assaulted several times by other inmates because of his behavior. Mr.

> Benyamini also complained of being placed with other inmates and indicated that he was concerned for his safety. The decision was made to place Mr. Benyamini in single or double cell. This decision was necessary to protect Mr. Benyamini from other inmates, to protect other inmates from Mr. Benyamini and to preserve the safety and security of the Stanislaus County Jails. In my opinion, general population was absolutely not a viable option for housing Mr. Benyamini.
>
> Pursuant to Department policy, any medical complaints of any inmate, including Mr. Benyamini, were immediately referred to medical staff. I have reviewed classification information regarding Mr. Benyamini and based upon that information and my recollection, Mr. Benyamini never complained of claustrophobia to me. If he had, I would have referred him to medical staff for evaluation, pursuant to policy.
>
> It was obvious to me that the risk of harm to Mr. Benyamini by being placed in general population was significant, particularly given the history of physical assault. I had no information that placing Mr. Benyamini in a single or double cell would cause Mr. Benyamini any or injury, whatsoever. Weighing the risks and benefits, it was clear that it was in Mr. Benyamini's best interest to remain in a one or two bed cell and not be placed in general population.

(Wilkerson Decl. ¶¶ 2-5.)   Defendant O'Grady declares as follows:

> I was employed by the Stanislaus County Sheriff's Office as a custodial officer from 1989 through September 11, 2006. During Mr. Benyamini's incarceration in the Stanislaus County Jail system, I was a classification officer. My job duties included making determinations regarding appropriate housing for inmates and arranging for appropriate transportation of inmates from one facility to another or to other destinations as needed. The primary consideration in all housing classification decisions was the safety of inmates and staff. All decisions I made concerning housing classifications was made pursuant to Department policy.
>
> Mr. Benyamini was a problem inmate. Mr. Benyamini made it very clear from the beginning of his incarceration that he wished to be placed in general population. However, Mr. Benyamini's presence in general population was extremely disruptive. His constant complaining, whining and disruptive behavior created security and safety issues in general population. We received several petitions from inmates asking that Mr. Benyamini be removed from general population because of the effect is was having on inmates' morale, particularly in regard to lost privileges and interference with other inmates' incarceration. Mr. Benyamini was physically assaulted several times by other inmates because of his behavior. The decision was made to place Mr. Benyamini in a

11

> single or double cell. This decision was necessary to protect Mr. Benyamini from other inmates, to protect other inmates from Mr. Benyamini and to preserve the safety and security of the Stanislaus County Jails.
>
> Pursuant to Department policy, any medical complaints of any inmate, including Mr. Benyamini, were immediately referred to medical staff. During Mr. Benyamini's stay, medical care was provided by the California Forensic Medical Group, and independent contractor. When Mr. Benyamini was placed in a single or double cell, he began complaining of claustrophobia. His complaints were always referred to medical staff for evaluation and follow up. I spoke on a number of occasions with CFMG medical staff, including a physician and psychiatric team. Mr. Benyamini was consistently cleared for housing in a single or double cell. I was advised on a number of occasions that Mr. Benyamini's complaints of claustrophobia were exaggerated and that his complaints were not a significant issue. Based upon the medical and psychiatric staff conclusions, it was clear to me that Mr. Benyamini's complaints of claustrophobia were made in an effort to get back into general population.
>
> It was obvious to me that the risk of harm to Mr. Benyamini by being placed in general population was significant, particularly given the history of physical assaults. It was equally obvious to me, based upon medical evaluations, that Mr. Benyamini's complaints of claustrophobia were exaggerated and that being held in single or double cell would not cause Mr. Benyamini any significant harm or injury. Weighing the risks and benefits, it was clear that it was in Mr. Benyamini's best interest to remain in a one or two bed cell and not be placed in general population.

(O'Grady Decl, ¶¶ 2-5.)

The Court finds that Defendants Wilcoxson, Wilkerson and O'Grady have met their burden on summary judgment. Defendants have come forward with evidence that establishes the lack of a triable issue of fact. Defendants' declarations clearly establish that they acted to prevent Plaintiff from further harm in removing him from general population. That Plaintiff disagreed with Defendants' actions and desired to remain in general population does not subject Defendants to liability. The evidence clearly establishes that Plaintiff was in danger of harm in general population, and had in fact been previously assaulted. The decision to remove Plaintiff from general population, despite his stated fears of claustrophobia, was in the best interest of Plaintiff. Plaintiff has not come forward with any evidence that establishes that any of the

defendants knew of and disregarded a serious risk to Plaintiff's safety resulting in injury to Plaintiff. Defendants' motion for summary judgment should therefore be granted.

Accordingly, IT IS HEREBY RECOMMENDED that the motion for summary judgment by Defendants Manjuano, Wilcoxson, Wilkerson and O'Grady by granted in favor of Defendants and against Plaintiff.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B). Within thirty days after being served with these findings and recommendations, plaintiff may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time waives all objections to the judge's findings of fact. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1988). Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **April 7, 2014**          /s/
**Gary S. Austin**
                                                  UNITED STATES MAGISTRATE JUDGE